Opinion issued June 26, 2008



     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00003-CV




IN RE BISON BUILDING MATERIALS, LTD., Relator







Original Proceeding on Petition for Writ of Mandamus




* * *
NO. 01-07-00029-CV




BISON BUILDING MATERIALS, LTD., Appellant

V.

TRACY SAMBRANO, Appellee




On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 06CV0148




MEMORANDUM OPINION

          Bison Building Materials, Ltd. (Bison) moved to compel arbitration in the trial
court and has challenged denial of that request as an abuse of discretion by
interlocutory appeal and by petition for a writ of mandamus. See Tex. Civ. Prac. &
Rem. Code Ann. § 171.098(a)(1) (Vernon 2005) (authorizing appeal of interlocutory
order denying motion to compel arbitration pursuant to Texas General Arbitration Act
(TGAA) in accordance with chapter 171 of Civil Practice and Remedies Code, Tex.
Civ. Prac. & Rem. Code § 171.001–.098 (Vernon 2005)); In re D. Wilson Constr.
Co., 196 S.W.3d 774, 780 (Tex. 2006) (exercising mandamus jurisdiction over order
denying motion to compel arbitration pursuant to Federal Arbitration Act (FAA)). 
Tracy Sambrano is the real-party-in-interest in Cause No. 01-07-00003-CV and the
appellee in Cause No. 01-07-00029-CV. Sambrano was an at-will employee of Bison
who was injured on the job in early August 2004. Though she received benefits
under Bison’s welfare-benefit plan, Sambrano sued Bison, claiming that its
negligence caused her injuries. Bison moved to compel arbitration of Sambrano’s
claims and now challenges the trial court’s ruling denying that motion. 
          We conditionally grant mandamus relief in accordance with FAA preemption
and dismiss the interlocutory appeal for lack of jurisdiction. 
Background
          Bison is a nonsubscriber under the Workers’ Compensation Act, having elected
not to provide workers’ compensation benefits to its employees. See Tex. Lab. Code
Ann. § 406.002 (Vernon 2006).


 Bison chose to adopt, instead, the “Bison Building
Materials, Ltd.’s Workplace Injury Plan” (Plan), an employee welfare-benefit plan for
its workers. As an employee hired after September 1, 2001, when the Plan became
effective, Sambrano was eligible to participate in the Plan on hiring. 
          Sambrano applied for at-will employment at Bison on January 29, 2002. On
February 13, 2002 she acknowledged receipt of the 15-page “Summary Plan
Description” of the Plan. As stated in the summary, the Plan provided for lost
income, medical care, and accidental death and dismemberment benefits to workers
who sustained “occupational injuries.” The Plan required no contributions by Bison
employees, but placed maximum limits on recovery of benefits.




A.      The Plan 
          1. General Considerations
          The first page of the Plan summary stated in bold face that the Plan was not a
policy of workers’ compensation insurance.


 The Plan defined eligibility for Plan
benefits as “contingent on . . . fulfilling all [Plan] requirements for benefits” and
specified that only limited benefits would be payable unless the employee “complied
with all of the requirements of the [Plan].” Payment of benefits was further
conditioned on the employee’s having sustained an “Occupational Injury,” as defined
in the Plan summary. The Plan summary set out the requirements for recovery of the
three types of payable benefits, specifically, lost time (income); medical-care; and
accidental death, dismemberment, or paralysis. 
2. Medical-Care Benefits 

          Regarding medical-care benefits, the Plan summary imposed several
prerequisites to eligibility for benefits, including the following: “You must sign the
Post Injury Waiver and Release in order to be eligible to receive Medical Care
Benefits . . . .” This requirement was repeated in a different section of the Plan
summary, under the heading “REQUIREMENTS YOU MUST FULFILL FOR
BENEFITS” (emphasis in original), which set out five requirements that had to be
fulfilled “in order to receive any benefits related to [an employee’s] Occupational
Injury.” The third of these requirements was to “Sign a Post Injury Waiver and
Release form” (post-injury litigation waiver). By signing a post-injury litigation
waiver, an injured employee surrendered the “right to file a legal action against
[Bison] for the injury.” The fifth requirement stated in the Plan summary was to
“Comply with all the other provisions and rules of the [Plan].” 
          3.       Claims Procedures
          The CLAIMS PROCEDURES provisions of the Plan summary also included
the requirement to sign the post-injury litigation waiver, under the heading, “1. 
Making Your Claim” (all emphasis in original). Under the heading,
DISQUALIFICATIONS/EXCLUSIONS, the Plan summary listed 13 reasons that
would result in lack of benefits. These included both failure to comply with Plan
requirements and 
[F]il[ing] a legal action against [Bison], the Claims Administrator, the
Plan Administrator, or the PLAN for damages related to an Occupational
Injury for which the PLAN is providing or may be obligated to provide
benefits.
 
4. Arbitration Sole Remedy for Employees Dissatisfied with Plan Benefits
          Also under the heading, “CLAIMS PROCEDURES” (emphasis in original),
the Plan summary outlined a five-step process, from making a claim, acceptance of
the claim, or, alternatively, denial of a claim, through mediation and final review. In
accordance with the exclusion or disqualification for filing “a legal action,” addressed
above, the fifth and final review provisions states,
5.Final Review Procedure: Final and Binding Arbitration:
If the matter is not resolved through mediation, and you are still
dissatisfied with a decision of the PLAN administrator concerning:
 
                    a.       the application of the PLAN to the injury[;]
 
                    b.       the amount or duration of the payments under the PLAN;
 
                    c.the performance by the Plan Administrator of its
obligations under the PLAN; or
 
d.any interpretation of the PLAN by the Plan Administrator;
 
you may file a written request with the Plan Administrator for arbitration
by an impartial arbitrator . . . .

The claims procedures section of the Plan summary concludes with the following
statement: 
“FINAL AND BINDING ARBITRATION IS YOUR SOLE
REMEDY IF YOU ARE DISSATISFIED WITH YOUR
TREATMENT UNDER THE PLAN.” 

(Emphasis in original.)
          On August 7, 2003, after she had been working for Bison for about a year and
a half, Sambrano signed an additional acknowledgment on receiving a copy of
Bison’s Policy Manual. The record does not disclose the contents of the manual, but
Sambrano’s acknowledgment includes the following recitals: (1) “I have reviewed
and understand the benefits given to me by [Bison]” and (2) “I further understand that
my employment is terminable ‘at will,’ either by myself or [Bison] regardless of the
length of my employment or the granting of benefits of any kind.”
B.      Sambrano’s Injury and Post-Injury Litigation Waiver
          Sambrano sustained an injury to her leg at work on August 5, 2004 and was
hospitalized. Just after Sambrano received emergency treatment and was awaiting
further treatment, a Bison representatibe arrived at the hospital and presented the
post-injury litigation waiver form to Sambrano.


 Sambrano signed the form while
awaiting treatment that same day.


 It is undisputed that Sambrano received benefits
under the Plan.


 
C.      Sambrano’s Lawsuit 
          A year and a half later, in February 2006, Sambrano sued Bison, seeking
damages for her injuries. Sambrano’s pleadings allege that her leg injury is
permanent, and she claimed that Bison’s negligence proximately caused her injuries. 
Bison’s answered that Sambrano had waived any right to sue Bison by signing the
post-injury litigation waiver. Bison also asserted waiver, release, estoppel, and
election of remedies. Both parties demanded a jury trial. In an amended pleading,
Sambrano alleged alternative claims, contending that the post-injury litigation waiver
was “void as to public policy,” that Bison had procured the document by undue
influence and duress, or that the document was procedurally unconscionable and
therefore unenforceable. 
          Bison moved for summary judgment based on Sambrano’s having executed the
post-injury litigation waiver, but did not prevail. Shortly thereafter, Bison moved to
compel arbitration. In accordance with arbitration provisions of the Plan, Bison
argued that “final and binding arbitration” was Sambrano’s only remedy, as a Plan
recipient, for claims relating to the application of the Plan to the injury and the
amount or duration of payments under the Plan. Sambrano opposed arbitration by
claiming that Bison had waived any right to arbitrate, having substantially invoked
the litigation process, and she re-urged her claim that she had signed the post-injury
litigation waiver under duress. The parties agreed to continue the trial setting, and
the trial court conducted a hearing on the motion to compel shortly before the trial
date. 
          The reporter’s record of the hearing shows the trial court denied the motion to
compel “based on the evidence submitted by [Bison] and the argument of both
counsel.” The trial court did not otherwise specify the grounds for its ruling.


 Bison
challenges the ruling by petition for a writ of mandamus and by interlocutory appeal. 
             Standard of Review—Denial of Motion to Compel Arbitration
          We review denial of a motion to compel arbitration for abuse of discretion. See
In re D. Wilson Const. Co., 196 S.W.3d at 780 (applying standard to grant mandamus
relief under FAA). A trial court abuses its discretion when it acts arbitrarily or
unreasonably and without reference to any guiding rules or principles. See Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). Because a trial court has no discretion
in determining what the law is, which law governs, or how to apply the law, we
review this category of discretionary rulings de novo. See Walker, 827 S.W.2d at
840.


 We apply this standard here, because the record in the interlocutory appeal and
in support of the petition for mandamus reflect that the trial court based its ruling on
the documentary evidence that Bison offered in support of its motion to compel,
which included the Plan summary, Sambrano’s acknowledgments, and Sambrano’s
post-injury litigation waiver. 
          We also review de novo, as a matter of law, whether the agreement imposes a
duty to arbitrate, because this raises a question of contract interpretation, which is a 
a question of law for the court. See In re Dillard Dep’t Stores, Inc., 186 S.W.3d 514,
515 (Tex. 2006). Courts construe arbitration agreements according to well-settled,
state-law contract principles. See In re D. Wilson Constr., 196 S.W.3d at 781 (citing
First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924
(1995)); Pepe Int’l Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 930 (Tex.
App.—Houston [1st Dist.] 1996, no writ) (combined appeal and orig. proceeding). 
To prevail on its motion to compel arbitration, Bison had to establish its right to that
remedy under the arbitration clause of the Plan summary as a matter of Texas law. 
See In re D. Wilson Constr., 196 S.W.3d at 781; Belmont Constructors, Inc. v.
Lyondell Petrochem. Co., 896 S.W.2d 352, 356–57 (Tex. App.—Houston [1st Dist.]
1995, no writ) (combined appeal and orig. proceeding).
Agreement to Arbitrate
          Courts may not order parties to arbitrate unless they have agreed to arbitrate.
Belmont Constructors, Inc., 896 S.W.2d at 356–57. Therefore, despite strong
presumptions that favor arbitration, a valid agreement to arbitrate remains a settled,
threshold requirement to obtaining relief, whether under the TGAA or the FAA. See
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003) (TGAA) (citing
Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002) (noting that
federal policy favoring arbitration does not remove preliminary requirement of valid
agreement to arbitrate); see also In re Kellogg Brown & Root, Inc., 166 S.W.3d 732,
737–38 (Tex. 2005) (stating that presumption favoring arbitration arises only after
party seeking to compel arbitration establishes valid agreement to arbitrate, because
purpose of FAA is to “‘make arbitration agreements as enforceable as other contracts,
not more so.’”) (quoting Bridas S.A.P.I.C. v. Gov’t of Turkm., 345 F.3d 347, 354 n.4
(5th Cir. 2003)). 
A.      Whether Sambrano Agreed to Arbitrate
          Sambrano was an at-will employee and thus had no contract of employment,
which gives rise to a question regarding her agreement to the provisions of the Plan. 
Bison had only to prove, however, that Sambrano received notice of the arbitration
clause in the Plan and accepted its provisions in order to be entitled to rely on the
arbitration clause and enforce it. See In re Dallas Peterbilt, Ltd., 196 S.W.3d 161,
162 (Tex. 2006); In re Halliburton Co., 80 S.W.3d 566, 568 (Tex. 2002). Sambrano
does not dispute notice of the Plan and, in fact, refers to “an agreement” between her
and Bison. She does not, however, refer to the Plan as the agreement. Instead, she
argues that no agreement arose until she signed the post-injury litigation waiver
because she was not “eligible” for benefits until then. Sambrano contends that
because she did not perform that “condition precedent” until after her injury, she did
not agree to arbitrate “anything” until then and thus did not accept the Plan provisions
until then. As demonstrated below, Sambrano had notice of the Plan, accepted its
terms before her injury, and therefore agreed to arbitrate. See In re Dallas Peterbilt,
Ltd., 196 S.W.3d at 162.
          1.       Notice
          In the arbitration context, an employee has notice if she has knowledge of the
terms of her employment. In re Dallas Peterbilt, Ltd., 196 S.W.3d at 162 (citing
Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986)). In re Halliburton
& Co. emphasized the importance of notice, but also held that a one-page summary
of the actual agreement to arbitrate sufficed as notice. 80 S.W.3d at 568–69. 
          In this case, Sambrano acknowledged receipt of Bison’s 15-page Plan summary
on February 13, 2002 as part of her hiring process at Bison. This summary contains
the arbitration clause, stated in emphasized text, which describes final and binding
arbitration as the final step of the claims-procedures process. This same section of
the Plan states, also in emphasized text, that final and binding arbitration is
Sambrano’s only remedy if she were dissatisfied with treatment under the Plan. In
accordance with arbitration as the “sole remedy,” the Plan summary also notifies that
disqualification or exclusion from benefits would result from (1) “filing a legal
action” for damages related to an occupational injury, as Sambrano did here, or (2)
failing to comply with Plan requirements. And after she had been working for Bison
for about 18 months, Sambrano again signed an acknowledgment, on receiving
Bison’s Policy Manual, that included the statement, “I have reviewed and understand
the benefits given to me. . . .” See In re Dallas Peterbilt., Ltd., 196 S.W.3d at 162
(stating that “notice analysis” is not restricted to underlying agreement, but
encompasses “all communications” between employer and employee). Sambrano’s
notice of the arbitration provisions of the Plan is clearly established.
           2.       Acceptance
          It is undisputed that Sambrano was employed by Bison, as an at-will employee, 
on the day she was injured. As demonstrated above, Sambrano had notice of the
terms of the Plan, as provided by the Plan summary, including the arbitration clause
and its provisions and the corresponding prohibition against filing a legal action at
the risk of loss of benefits. Furthermore, she confirmed that she had reviewed and
understood her benefits 18 months after she had been working for Bison. 
          As an at-will employee who received notice of Bison’s arbitration policy, as
stated in the Plan, and continued working for Bison with knowledge of that policy,
Sambrano accepted those terms of the Plan as a matter of law. See id., 196 S.W.3d
at 193 (citing In re Dillard Dep’t Stores, Inc., 181 S.W.3d at 375). 
B.      Whether Sambrano Asserted Defenses to the Arbitration Clause
          Sambrano acknowledges Bison’s arguments and the In re Dallas Peterbilt, Ltd.
holding, but argues that Bison improperly obtained her acceptance and, therefore, that
no acceptance ever occurred. We disagree. Sambrano challenges her acceptance by
asserting two defenses—duress and “procedural” unconscionability. As the party
opposing arbitration, Sambrano had the burden to prove her defenses. In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001). 
          Sambrano’s claimed defenses trigger questions of procedural versus substantive
arbitrability. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84–86, 123 S.
Ct. 588, 592–93 (2002); In re Neutral Posture, Inc., 135 S.W.3d 725, 728 (Tex.
App.—Houston [1st Dist.] 2003) (orig. proceeding). Procedural arbitrability pertains
to questions that “grow out of the dispute and bear on its final disposition,” for
example, whether conditions precedent have been met, notice, time limits, lâches, and
estoppel; procedural arbitrability issues are reserved for resolution by the arbitrator.



Howsam, 537 U.S. at 84–85, 123 S. Ct. at 592; In re Neutral Posture, 135 S.W.3d at
728.


 In contrast, the trial judge decides questions of substantive arbitrability, which
implicate “gateway” issues, for example, whether a particular agreement binds the
parties to arbitrate, which Sambrano disputes here. See Howsam, 537 U.S. at 85, 123
S. Ct. at 592; In re Neutral Posture. 135 S.W.3d at 728; see also Perry Homes v. Cull,
No. 05-0882, 2008 WL 1922978 at *4 (Tex. May 2, 2008) (“[C]ourts decide defenses
relating solely to the arbitration clause,” as opposed to defenses that pertain to entire
contract, which are for arbitrator); In re FirstMerit Bank, N.A., 52 S.W.3d at 756 (“[I]f
they are to defeat arbitration,” defenses “must relate specifically” to arbitration
provisions; “[d]efenses that pertain to the entire . . . contract can be arbitrated.”) (citing
Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04, 87 S. Ct.
1801, 1806 (1967)). 
          Though Sambrano purports to challenge whether she agreed to arbitrate, the
defenses she asserts and her arguments in support of those defenses do not present that
challenge. Just as she claimed there was no agreement to arbitrate until she signed the
post-injury litigation waiver, Sambrano’s defenses also focus exclusively on that
document. Sambrano’s claim of duress relates only to the circumstances under which
she signed the post-injury litigation waiver. She relies on those same circumstances
in claiming that the waiver was rendered unconscionable. 
          But nothing whatsoever in the post-injury waiver refers to arbitration or relates
to arbitration.


 The arbitration clause, and its corresponding prohibition against
litigation for those receiving Plan benefits, appears only in the Plan summary. As a
matter of law, Sambrano acknowledged and accepted the terms of the Plan summary,
including its arbitration provisions, by continuing her employment, as explained
above. Sambrano does not attempt to apply her claimed defenses to the Plan summary
or its arbitration clause, and the defenses do not relate to the Plan Summary or its
arbitration clause. Accordingly, there was no preliminary, “gateway” question of
substantive arbitrability that remained for resolution by the trial judge—to prevent
referring the case to arbitration—regarding whether Sambrano had agreed to arbitrate. 
See Howsam, 537 U.S. at 85, 123 S. Ct. at 592; Perry Homes, 2008 WL 1922978 at
*4; In re FirstMerit Bank, N.A., 52 S.W.3d at 756.
          We hold that Sambrano neither alleged that her asserted defenses applied to the
her acceptance of the Plan summary, which alone contained the arbitration
requirement, nor proved that her asserted defenses applied to her acceptance of the
Plan summary.


 
 

FAA or TGAA?
          We determine next whether the FAA or the TGAA applies, because the inquiry
determines our jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1);
In re D. Wilson Const. Co., 196 S.W.3d at 780 & n.4, 784 (Brister, J., concurring);
Kilroy v. Kilroy, 137 S.W.3d 780, 783 (Tex. App.—Houston [1st Dist.] 2004) (orig.
proceeding) (stating that Court must address its jurisdiction even if not raised by
parties) (citing McCauley v. Consol. Underwriters, 304 S.W.2d 265, 266 (Tex. 1957)). 
A.      The Plan “Invokes” the FAA
          Sambrano challenges our jurisdiction to consider Bison’s challenge by
mandamus on the grounds that the arbitration clause in the Plan does not “invoke” the
FAA.


 Absent certain exceptions that do not apply here, the FAA applies to all suits
in state or federal court, when the dispute concerns a “contract evidencing a
transaction involving commerce.” Jack B. Anglin Co., 842 S.W.2d 266, 269–70 (Tex.
1992). 
          The arbitration clause of The Plan summary does not specify whether the FAA
or the TGAA controls. Accordingly, both may apply. See In re D. Wilson Constr.,
196 S.W.3d at 779–80. The provision mandating arbitration in the Plan summary that
Sambrano accepted here is “valid, irrevocable, and enforceable” pursuant to section
2 of the FAA, “save upon such grounds as exist at law or in equity for the revocation
of any contract.” See 9 U.S.C.S. § 2 (1997). This section of the FAA reflects the
intent of Congress to establish a liberal federal policy that (1) favors arbitration,
despite contrary substantive or procedural state policies, and (2) establishes a federal
substantive law of arbitrability that applies to any arbitration agreement within the
FAA. Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.
Ct. 927, 941 (1983). Courts must, therefore, resolve any doubts about the scope of an
arbitration agreement in favor of arbitration. Mitsubishi Motors Corp. v. Soler
Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 3353–54 (1985); In re
FirstMerit Bank, N.A., 52 S.W.3d at 753.
          1.       An “Employee Welfare-Benefit Plan” regulated by ERISA
          The federal Employee Retirement Income Security Act of 1974 (ERISA) defines
an “employee welfare benefit plan” to include 
any plan, fund, or program . . . established or maintained by an employer
. . . to the extent that such plan, fund, or program was established or is
maintained for the purpose of providing for its participants or their
beneficiaries, through the purchase of insurance or otherwise, medical,
surgical, or hospital care or benefits, or benefits in the event of sickness,
accident, disability, death, or unemployment . . . .” 
 
29 U.S.C.S. § 1002(1) (A) (2006); see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44,
107 S. Ct. 1549, 1551 (1987). 
          The Plan summary that Sambrano acknowledged in this case recites that Bison
established and maintained the Plan to provide benefits to its employees and their
beneficiaries because of “occupational injury,” as defined in the Plan summary, or
death. In addition, the Plan summary notified participants of their rights under
ERISA. The Plan is an “employee welfare-benefit plan” regulated by ERISA. 29
U.S.C.S. § 1002(1).
          2.       Plan Affects Both Interstate Commerce & Federal Taxing Power
          Settled law recognizes that arbitration may apply in the employment context. 
See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 113–15, 121 S. Ct. 1302,
1308–09 (2001); In re Halliburton Co., 80 S.W.3d at 570. Section 1001(a) of ERISA
declares that employee welfare-benefit plans affect not only interstate commerce, but
also the federal taxing power. 29 U.S.C.S. § 1001(a) (2006).


 The Plan affects
interstate commerce under the plain language of ERISA, as well as the federal taxing
power. See id.
B.      Whether the FAA Preempts Texas Law—Four-Part Test
          When, as here, an arbitration clause does not specify whether the TGAA or the
FAA applies, with the result that both may apply, a question of federal preemption
arises. See In re D. Wilson Constr., 196 S.W.3d at 779–80. The FAA preempts only
contrary state law, not consonant, state law. See id., 196 S.W.3d at 779. The FAA
itself contains no provisions that expressly exempt state law, but state law may
nonetheless conflict with the FAA “to the extent that it ‘stands as an obstacle to the
accomplishment and execution of the full purposes and objectives’” of Congressional
intent in enacting the FAA. See id. (quoting Volt Info. Scis, Inc. v. Bd. of Trs. of
Leland Stanford Junior Univ., 489 U.S. 468, 477–78, 109 S. Ct. 399, 1248, 1255
(1989) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941))); see
also Perry v. Thomas, 482 U.S. 483, 489, 492 & n.9, 107 S. Ct. 2520, 2525, 2527 &
n. 9 (1987) (stating that supremacy clause of United States Constitution compels that
FAA control over state legislative or judicial attempts to undercut enforceability of
arbitration agreements) (citing U.S. Const. art. IV, cl. 2.)). The dispositive inquiry
is whether application of state law “would undermine the goals and policies of the
FAA.” In re D. Wilson Constr., 196 S.W.3d at 779; see also Jack B. Anglin Co., 842
S.W.2d at 271 (Tex. 1982) (“[The FAA] preempts state statutes to the extent they are
inconsistent with [the FAA]”; holding that FAA preempted nonwaiver provisions of
DTPA).
          Applying state law will undermine the goals and policies of the FAA, which
will, therefore, preempt the contrary state law, when, but only when: (1) the
agreement is in writing; (2) it involves interstate commerce; (3) it can withstand
scrutiny under traditional contract defenses under state law and (4) state law affects
enforceability of the agreement.” In re D. Wilson Constr., 196 S.W.3d at 780
(emphasis in original) (citing In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69
(Tex. 2005) (stating four-part test)). This analysis follows.
          1.       Elements One through Three
          The arbitration provision at issue here is part of Bison’s Plan, which is in
writing and involves interstate commerce, as explained above. In addition, the
arbitration provisions of Bison’s Plan can withstand scrutiny under Sambrano’s
claimed defenses. As our analysis demonstrates, despite Sambrano’s claimed
defenses, Bison is entitled to enforce the arbitration provisions of the Plan because
Sambrano accepted them as a matter of law by acknowledging the Plan summary and
continuing to work for Bison. In re Dallas Peterbilt, Ltd., 196 S.W.3d at 163. 
 

           2.      State Law Undercuts Enforceability 
          Under the final step of the preemption analysis, we determine whether Texas
law affects enforceability of the arbitration requirement stated in the Plan summary. 
See In re D. Wilson Constr., 196 S.W.3d at 780 (noting that TGAA expressly exempts
certain claims to which it does not apply). For the FAA to preempt state law, state law
must refuse to enforce an arbitration agreement that the FAA would enforce. See id.
          a.       The TGAA 
          Sambrano’s claims in the underlying lawsuit allege that Bison’s negligence
caused her injuries. For a claim for personal injuries to be “subject to” and therefore
enforceable under the TGAA, (1) each party to the claim must, “on the advice of
counsel, agree[] in writing to arbitrate and (2) the agreement to arbitrate must be
signed by each party and each party’s counsel. Tex. Civ. Prac. & Rem. Code Ann.
§§ 171.002(a)(3), (c)(1)–(2).
          Neither of these prerequisites occurred in this case. Sections 171.002(a)(3) and
(c)(1)(2) of the TGAA would, therefore, refuse to enforce the arbitration clause in the
Plan summary, despite Sambrano’s having accepted it as a matter of law under In re
Dallas Peterbilt, Ltd., 196 S.W.3d at 163. The TGAA interferes, therefore, with
enforceability of the arbitration clause that Sambrano acknowledged here by adding
the additional prerequisites of consent and signature of counsel. See In re Nexion
Health at Humble, Inc., 173 S.W.3d at 69 (interpreting sections 171.002(a)(3) and
(c)(3)). Accordingly, the FAA preempts the TGAA. See id.
          b.       Labor Code Sections 406.033(a) and (e) 
          The Labor Code classifies Bison as an employer who exercised its right not to
provide workers’ compensation coverage for its employees. See Tex. Lab. Code
Ann. § 406.002. Having elected not to provide workers’ compensation insurance, 
Bison became subject to suit by an employee to recover damages for any personal
injuries she sustained while in the course and scope of her employment. See Tex.
Lab. Code Ann. § 406.033(a) (Vernon 2006). As an additional consequence, if Bison
were to be sued, Bison could not assert either the common-law defenses enumerated
in section 406.033(a)(1) or statutory comparative responsibility in any such lawsuit. 
See Tex. Lab. Code Ann. § 406.033(a)(1)–(3) (Vernon 2006);


 Kroger Co. v. Keng,
23 S.W.3d 347, 350–51 (Tex. 2000) (rejecting comparative responsibility as available
defense to nonsubscribing employer).
          But the Plan that Bison adopted in lieu of providing workers’ compensation
benefits eliminates the applicability of these prohibitions. This is because the Plan
bars any lawsuit whatsoever relating to recovery of damages for an employee’s
occupational injuries under section 406.033(a), when the Plan “is providing or may
be obligated to provide benefits.” As the Plan summary dictates, filing “a legal
action” against Bison when the Plan “is providing or may be obligated to provide
benefits” constitutes a “disqualification” or “exclusion” from Plan benefits. In
addition, section 406.033(e) of the Labor Code renders “void and unenforceable” any
agreement by an employee that waives either a cause of action under subsection (a)
of section 406.033 or any right described in that subsection when that agreement
occurs before the injury or the death. Tex. Lab. Code Ann. § 406.033(e) (Vernon
2006).


 
          By acknowledging the Plan summary on hiring, Sambrano acknowledged,
before her injury, that filing a lawsuit relating to any injury would result in no Plan
benefits if she elected to participate in the Plan for an injury—despite the prohibition
against pre-injury waiver in section 406.033(e). Sambrano also acknowledged that
failure to comply with Plan requirements was an additional basis for “disqualification”
or “exclusion” stated in the Plan summary. The Plan is even more specific in
precluding litigation for Plan participants because the claims-procedure process
outlined in the Plan summary compels final and binding arbitration as the sole remedy
for an employee who is dissatisfied with benefits or treatment under the Plan, again
despite section 406.033(e)’s prohibitions. By continuing to work for Bison, Sambrano
accepted these terms. See In re Dallas Peterbilt, Ltd., 196 S.W.3d at 163. The
prohibition against pre-injury waiver stated in section 406.033(e) could, therefore,
render the arbitration clause of the Plan unenforceable. 
          We have already held that the Plan affects interstate commerce pursuant to
ERISA and now hold that the FAA preempts any potential application of the Texas
non-waiver provision stated in Labor Code section 406.033(e) to prevent enforcement
of the arbitration clause stated in the Plan. In reaching this conclusion, we have found
persuasive the reasoning of our sister court of appeals in In re Border Steel, Inc., 229
S.W.3d 825, 832 (Tex. App.—El Paso 2007) (orig. proceeding). 
          In accordance with FAA preemption, Bison’s remedy in this Court is by
mandamus. See In re Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005)
(recognizing propriety of mandamus relief to enforce arbitration agreements governed
by FAA); see also In re Dallas Peterbilt, Ltd., 196 S.W.3d at 163 (noting lack of
adequate remedy by appeal for party denied “contracted-for” right to arbitration under
FAA) (citing Jack B. Anglin Co., 842 S.W.2d at 272–73).


 
Whether the Arbitration Clause Encompasses Sambrano’s Claims
          Having determined that Bison may enforce the arbitration provisions of the Plan
against Sambrano and that the FAA applies, we address Sambrano’s contention that
her claims are not within the scope of the Plan. See In re FirstMerit Bank, N.A., 52
S.W.3d at 753. Sambrano contends that the arbitration provisions here do not
encompass her personal injury lawsuit because the provisions are narrowly related to
the claims process and a decision by the plan administrator to deny a claim in whole
or in part. 
          Sambrano’s contentions ignore that the purpose of the Plan is to provide
benefits for employees, like Sambrano, “who are injured on the job.” Though
Sambrano claims the Plan relates solely to the claims process, that process cannot
begin until there is a claim for an “occupational injury.” The Plan defines an
“occupational injury” as “any physical injury you sustain in the normal course of
performing your duties for [Bison].” According to her live pleadings in the underlying
case, Sambrano “permanently injured her leg” “while in the course of the employ of
[Bison],” when she was “struck by product being moved be a coworker.” 
          The injury for which Sambrano seeks to recover damages from Bison is thus an
“occupational injury” defined by the Plan and within the scope of the five-step claims
process of the Plan. The last step of this Plan mandates “final and binding arbitration”
to resolve “dissatisfaction” regarding all decisions by the Plan administrator regarding
benefits to be paid for that injury.


 The Plan’s concluding provisions remove all
doubt regarding compulsory arbitration by specifying even more broadly that “full and
binding arbitration” is the “sole remedy” for anyone “dissatisfied” with “treatment”
under the Plan. Sambrano accepted all of these terms through her continued
employment at Bison. See In re Dallas Peterbilt, Ltd., 196 S.W.3d at 163. Her
lawsuit thus violates both the Plan’s prohibition against pursuing a legal action against
Bison for her injuries and the corresponding requirement that she arbitrate those
claims. 
          We reject Sambrano’s narrow interpretation of the Plan and hold that the
arbitration provisions of the Plan encompass the claims she alleged in her lawsuit
against Bison and therefore control. We further hold, therefore, that Bison
conclusively established its right to arbitrate Sambrano’s claims. 
          As in the trial court, however, Sambrano opposes Bison’s request for mandamus
relief by contending that Bison substantially invoked the judicial process and therefore
waived any right to arbitration. Because we have recognized that Bison established
its right to arbitration, and because the law favors arbitration and strongly disfavors
waiver of arbitration, Sambrano must overcome a “high” “hurdle” in order to establish
that Bison waived that right. See Perry Homes, 2008 WL 1922978 at 4.


Whether Bison Substantially Invoked the Litigation Process
A.      Standard of Review: Totality of Circumstances
          Whether Bison substantially invoked the judicial process is a question of law
that we determine from the totality of the circumstances of this particular case. See
id. The dispositive inquiry is whether Bison, as the party seeking arbitration, invoked
the judicial process to such a degree that its actions resulted in prejudice or detriment
to Sombrano. See In re Citigroup Global Mkts., No. 06-0886, 2008 WL 2069835 at
*1 (Tex. May 16, 2008) (citing Perry Homes, 2008 WL 1922978 at *4). 
          Well-settled law recognizes presumptions that favor arbitration of disputes. 
E.g., In re Kellogg Brown & Root, Inc., 166 S.W.3d at 737–38. A “strong”
presumption thus arises against waiver of arbitration rights. In re D. Wilson Constr.,
196 S.W.3d at 783; see also Perry Homes, 2008 WL 1922978 at *4, 6 (stating that
waiver by substantially invoking judicial process compels “high” evidentiary “hurdle,”
because of “strong presumption” against waiver, which “should govern” “in close
cases”); In re Bank One, N.A., 216 S.W.3d 825, 827 (Tex. 2007) (recognizing “strong”
presumption against waiver; further stating that waiver “must be intentional”) (citing
and quoting EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 88 (Tex. 1996) (applying
FAA)). 
          Yet, parties who “‘conduct full discovery, file motions going to the merits, and
seek arbitration only on the eve of trial’” may nonetheless waive contractual rights to
arbitrate. In re Citigroup Global Mkts., 2008 WL 2069835 at *1 (quoting In re Vesta
Ins. Group, 192 S.W.3d 759, 764 (Tex. 2006)). 
          Waiver of arbitration rights may be express or implied. See id., 2008 WL
2069835 at *2. Express waiver arises when a party affirmatively indicates that it
wishes to resolve the case in the judicial forum, rather than through arbitration. In re
Citigroup Global Mkts., 2008 WL 2069835 at *2 (rejecting express waiver premised
on party’s having sought transfer to federal multidistrict-litigation court). Implied
waiver arises when a party acts (1) inconsistently with the right to arbitrate and (2)
prejudices the opposing party. See id., 2008 WL 2069835 at *2 (“Waiver . . . asks
whether a party has substantially invoked the judicial process to the opponent’s
detriment, the latter term meaning inherent unfairness caused by a party’s attempt to
have it both ways by switching between litigation and arbitration to its own
advantage.”) (quoting Perry Homes, 2008 WL 1922978 at 8); see also Perry Homes,
2008 WL 1922978 at 6–7 (declining to vacate requirement that party claiming waiver
premised on substantial invocation of judicial process demonstrate prejudice, stating,
“[W]e agree . . . that waiver of arbitration requires a showing of prejudice.”). 
Sambrano does not contend here that Bison expressly waived arbitration, but that
Bison’s conduct demonstrates an implied waiver of any right to arbitrate. 
B.      Discussion
          To succeed in challenging the right of Bison to arbitrate recognized by this
opinion, on the grounds that Bison had waived that right by substantially invoking the
judicial process, Sambrano had to establish that (1) Bison pursued the litigation
process, but then (2) changed its strategy and pursued arbitration (3) in an inherently
unfair manner that worked to its own advantage and to Sambrano’s prejudice or
detriment. See In re Citigroup Global Mkts., 2008 WL 2069835 at *1; Perry Homes,
2008 WL 1922978 at *4; In re Bank One, N.A., 216 S.W.3d at 827; In re Vesta Ins.
Group, 192 S.W.3d at 763. To meet this burden, Sambrano had to show that Bison’s
pursuit of the litigation process, rather than the arbitration process, was essentially
irretrievable. See Perry Homes, 2008 WL 1922978 at 6 (“In cases of waiver by
litigation conduct, the precise question is not so much when waiver occurs as when
a party can no longer take it back.”).
          In accordance with the analysis and test announced in Perry Homes and applied
in In re Citigroup Global Markets, we examine the trial-court timetable and the
totality of circumstances demonstrated by the record. 
          1.       Timetable
          Sambrano sued Bison on February 6, 2006 and demanded a jury. Bison filed
its jury demand on March 3, 2006. The trial court scheduled a status conference for
May 11, 2006, endorsed the parties’ agreed discovery and docket control order setting
an October 30, 2006 trial date, and scheduled a pretrial conference for October 23,
2006. Sambrano deposed Bison employees Vidler and Silvas on June 1, 2006, and
filed an amended petition on Jun 17, 2006. Bison served depositions by written
questions in April and May 2006 relating to Sambrano’s treatment and expenses.
          Bison’s June 22, 2006 amended answer asserted several defenses derived from
Bison’s contention that the terms of the Plan and Sambrano’s post-injury waiver
precluded any lawsuit against Bison premised on that injury. Bison filed a traditional
motion for summary judgment that same day, contending that Sambrano had
intentionally relinquished her right to bring her lawsuit. Bison relied on the following
in moving for summary judgment: Sambrano’s petition; Bison’s own business records
pertaining to the Plan and Sambrano’s employment; and the affidavit of Bison
employee Vidler, who stated that he presented the post-injury waiver to Sambrano and
that she indicated that she understood its terms. 
          Having filed the certificates for her June 1, 2006 depositions of Vidler and Silva
on July 1, 2006 and designated her expert witnesses on July 6, 2006, Sambrano filed
her response to Bison’s motion for summary judgment on July 17, 2006. Her
summary-judgment evidence included a page from her deposition of Vidler.


 Like
Bison, Sambrano relied on the Plan provisions. In addition, she provided affidavit
testimony in opposition to Bison’s motion, including her own affidavit, regarding her
signing the post-injury waiver. The trial court conducted a hearing on Bison’s motion
for summary judgment on July 20, 2006 and denied the motion that same day. 
          Bison moved to compel arbitration on September 6, 2006. Sambrano had not
yet filed a response to the motion to compel on October 23, 2006, when the trial court
made a docket entry stating that the parties had entered into an “agreed oral motion for
continuance to January 8, 2007.” The same docket entry records that the trial court
reset the pretrial conference to January 2, 2007.


 
          Sambrano then filed her October 24, 2006 objection to arbitration, in which she
claimed only that Bison had waived any right to arbitrate because it had substantially
invoked the litigation process, as follows: “Written discovery has been conducted,
depositions have been taken[,] and the trial court has denied Bison’s motion for
summary judgment.” Sambrano did not identify whether she or Bison had conducted
the discovery or noticed the depositions in question, but the record shows that only
Sambrano had deposed anyone at that point in the timetable, having deposed both
Vidler and Silva on June 1, 2006. Bison, on the other hand, had conducted but
minimal discovery, in the form of depositions on written questions for records of
Sambrano’s medical treatment and expense—information to which Bison was entitled
whether Sambrano’s claims were arbitrated or litigated. 
          Sambrano did not, however, contend that Bison’s request to arbitrate her claims
prejudiced her or resulted in any detriment to her. In fact, she maintained that a
showing of prejudice to her was not an “indispensable” requirement to determining
whether Bison had substantially invoked the judicial process, a contention that the
supreme court has since rejected, in both Perry Homes and Citigroup Global Markets,
which reaffirmed the requirement that the party opposing arbitration must demonstrate
prejudice or detriment if it seeks to avoid arbitration because of its opponent’s having
substantially invoked the judicial process. Citigroup Global Mkts., 2008 WL 2069835
at *1; Perry Homes, 2008 WL 1922978 at *7. We note further that Sambrano offered
no evidence to support her contention that Bison had substantially invoked the judicial
process. See In re Citigroup Global Mkts., 2008 WL 2069835 at *3 (holding that
opponents to arbitration “failed to show” waiver by substantial invocation of judicial
process); In re Vesta Ins. Group, 192 S.W.3d at 763 (noting that party opposing
arbitration had not provided sufficient evidentiary support to demonstrate “sufficient
prejudice to overcome the strong presumption against waiver”); Williams Indus. v.
Earth Dev. Sys., Inc., 110 S.W.3d 131, 135–36, 139 (Tex. App.—Houston [1st Dist.]
2003, no pet.) (noting evidentiary burden on party who opposes arbitration to establish
prejudice arising from allegedly substantial invocation of judicial process and holding
that burden not met).
          The trial court conducted a hearing on Bison’s motion to compel arbitration on
January 3, 2007. Sambrano presented no evidence in opposition to arbitration at the
hearing. In addition, she did not present argument in support of the only defense that
she raised in opposition to Bison’s motion to compel, her claim that Bison had 
substantially invoked the judicial process. Instead, Sambrano focused on the
circumstances under which she signed the post-injury waiver.


 Bison responded that
(1) reliance on the post-injury waiver was misplaced because the document did not
address arbitration, and that (2) the provisions of the Plan, which contained the
arbitration provisions, were dispositive because Sambrano had endorsed the Plan five
years earlier, in February 2002, and had not raised any issue or presented any evidence
of duress concerning that date. 
          The trial court denied Bison’s motion to compel at the conclusion of the January
3, 2007 hearing and signed the order challenged here on January 5, 2007, whereupon
Bison sought leave to stay the January 8, 2007 trial setting and requested a hearing. 
Also on January 5, 2007, Bison deposed Sombrano. Two days later, Bison filed a
motion to stay the trial setting. This Court ordered the trial proceedings stayed on
January 8, 2007.
          1.       Delay in Seeking Arbitration
          A party may waive its contractual right to arbitrate by seeking arbitration on the
eve of trial. In re Citigroup Global Mkts., 2008 WL 2069835 at *1 (quoting In re
Vesta Ins. Group, 192 S.W.3d at 764). In this case, Bison filed its motion to compel
arbitration pursuant to the provisions of the Plan on September 6, 2006. This date was
four months before the January 8, 2007 trial setting, exactly seven months after
Sambrano filed suit, and about six weeks after the trial court denied the motion for
summary judgment in which Bison relied on the terms of the post-injury waiver. 
Sambrano did not contend in her objection, filed seven weeks after Bison moved to
compel arbitration, that Bison sought arbitration on the eve of trial and did not raise
that argument to the trial court at the January 3, 2007 hearing. We cannot say, based
on the record presented, record, that Bison sought to compel arbitration on the eve of
trial. 
          Sambrano does contend in this Court, though she did not in the trial court, that
Bison delayed requesting a hearing on its previously filed motion to compel. This
contention likewise lacks support under the record presented. We note that a January
2, 2007 docket entry by the trial court refers to a setting on the motion for January 3,
2007, but the record does not contain a request that the motion to compel be heard on
that date. The record also shows that the trial court heard Bison’s motion to compel
on that date, which is the date set for the pretrial conference under Sambrano’s and
Bison’s joint motion for continuance. The record also reflects that the parties moved
jointly to continue the trial, but only after Bison had filed its motion to compel
arbitration, and one day before Sambrano filed her objection. Under the
circumstances, the record does not foreclose that the trial court and the parties had
contemplated, early on, that Bison’s motion to compel would be among matters to be
taken up at the pretrial conference on January 3, 2007. 
          Sambrano did not establish, therefore, that Bison delayed seeking arbitration. 
Texas courts have rejected claims of implied waiver under circumstances
demonstrating a far lengthier litigation timetables. See In re Citigroup Global Mkts.,
2008 WL 2069835 at *2 (noting seven months of transfer efforts by party that
ultimately filed motion to compel); In re Vesta Ins. Group, 192 S.W.3d at 763 (noting
contention by party opposing arbitration that parties seeking to compel arbitration had
been “litigating for two years in the trial court”). 
          2.       Motions “Going to the Merits”
          A party may waive its contractual right to arbitrate by filing dispositive motions
that go to the merits of the case. See In re Citigroup Global Mkts., 2008 WL 2069835
at *1 (quoting In re Vesta Ins. Group, 192 S.W.3d at 764). Sambrano supports her
contention that Bison chose to pursue litigation vigorously, rather than arbitration, by
emphasizing that Bison sought summary judgment before filing its motion to compel. 
          A party’s seeking relief by a dispositive motion is one of several possible
factors to be applied when considering the totality-of-circumstances test that
determines whether a party has waived arbitration by substantially invoking the
judicial process. Perry Homes, 2008 WL 1922978 at *4–5. But it is not the only
factor. Id. The type of dispositive motion contemplated by the Perry Homes factors
is a motion that seeks judgment on the merits. See id.; see also id. at *5 (“Waiver
involves substantial invocation of the judicial process, not just judgment on the
merits.”) (emphasis in original). 
          Bison did not seek summary judgment on the merits of Sambrano’s claims in
this case. Rather, the purpose of Bison’s motion for summary judgment was to avoid
litigating Sambrano’s claims, on the grounds that she had waived any litigation
premised on her injuries. Though Bison’s motion sought disposition of Sambrano’s
claims, the grounds stated in the motion did not go to the merits of those claims. 
Rather, Bison’s moving for summary judgment based on Sambrano’s having waived
any right to litigate. Having the motion heard before seeking arbitration thus “reflects
an effort to avoid litigation activity rather than duplicate it.” In re Citigroup Global
Mkts., 2008 WL 2069835 at *2 (emphasis in original). 
          3.       Conducting Full Discovery
          A party may waive its contractual right to arbitrate by conducting “full
discovery” on the merits of the case. See In re Citigroup Global Mkts., 2008 WL
2069835 at *1 (quoting In re Vesta Ins. Group, 192 S.W.3d at 764). In objecting to
arbitration, Sambrano argued that “[w]ritten discovery has been conducted [and]
depositions have been taken.” She did not contend that discovery was “full” or
“complete.”
          As shown by the timetable, under the record presented here, as supplemented
by Sambrano, only Sambrano had taken any depositions, those of Bison employees
Vidler and Silvas, when Bison moved to compel arbitration. See In re Vesta Ins.
Group, 192 S.W.3d at 764) (attributing substantial costs incurred before arbitration
to party opposing arbitration); Perry Homes, 2008 WL at *5 (noting relevancy of
which party initiated discovery as factor to waiver issue). Bison, on the other hand,
did not depose Sambrano until January 5, 2007, after the trial court denied Bison’s
motion to compel, despite Sambrano’s having designated her experts five months
earlier. See id. As supplemented by Sambrano, the record demonstrates that Bison
conducted written discovery by written questions regarding Sambrano’s treatment and
expenses arbitration. Yet, this is information that would necessarily have been
produced whether Sambrano’s claims were litigated or arbitrated. See id. at *4–5
(noting that federal courts consider whether discovery requested “would be
unavailable in arbitration”). When Bison moved to compel arbitration, therefore, the
only discovery it had requested would have been “useful” either in arbitration or in
litigation. In contrast, any discovery that Sambrano had pursued to attribute fault to
Bison or a co-employee would have had no bearing on compensation for her injuries
under the provisions of the Plan and thus would not have been “available” in
arbitration. See id. 
          Noting in particular that the discovery Bison conducted before moving to
compel arbitration pertained either to litigation or arbitration, and that Bison did not
depose Sambrano until after the trial court had denied Bison’s motion to compel
arbitration, the record before us does not show that discovery was either “complete”
or “full.” See In re Citigroup Global Mkts., 2008 WL 2069835 at *1. 
          4.       Prejudice or Detriment to Sambrano
          To avoid arbitration because of its opponent’s having substantially invoked the
judicial process, the party opposing arbitration must demonstrate prejudice or
detriment. Citigroup Global Mkts., 2008 WL 2069835 at *1; Perry Homes, 2008 WL
1922978 at *4.
          Sambrano failed her burden to establish this element, whose necessity she had
disputed at the threshold. She did not claim prejudice or any detriment in her
objection or at the hearing on Bison’s motion to compel arbitration, and she offered
no evidence of either. Accordingly, she did not establish this necessary element. 
Citigroup Global Mkts., 2008 WL 2069835 at *1; Perry Homes, 2008 WL 1922978
at *4.
          5.       Totality of Circumstances Applied
          The supreme court concluded in Perry Homes that the plaintiffs in that case had
substantially invoked the judicial process before they sought to arbitrate their claims
and, on that basis, vacated the arbitrators award. 2008 WL 1922978 at *7, 11. In
Perry Homes, however, the totality of circumstances established that the parties who
sought to compel arbitration just before trial had “‘vigorously opposed’” the
arbitration requested by the defendants early in the case, and in a response that totaled
79 pages and included broad attacks on the process of arbitration itself. Id. at 7. Yet,
they “change[d] their minds” and moved to compel arbitration 14 months after they
filed suit and just four days before trial was to begin. Id. at *1, 8. At that point in the
litigation process, plaintiffs had “conducted extensive discovery about every subject
of the merits” id., including the following: ten depositions; five motions to compel to
which they had attached 76 requests for production; notices of six additional
depositions on nine issues, along with a request for 67 categories of documents; and
three additional notices of depositions for three defense experts, accompanied by a
request for 24 categories of documents. Id. at *7. Discovery was virtually complete,
therefore, before the plaintiffs requested arbitration. Considering the totality of these
circumstances, the supreme court concluded that the plaintiffs’s conduct had “plainly
rebutted” the “strong presumption against waiver of arbitration.” Id. at *1. 
          In contrast, the totality of the circumstances in this case does not support
Sambrano’s contention that Bison waived its right to arbitration by substantially
invoking the litigation process. To the contrary, whether by its summary judgment or
by arbitration, Bison’s consistent posture was not to invoke litigation, but to avoid it,
whether based on Sambrano’s post-injury waiver of litigation, by summary judgment,
or, when that failed, by arbitration. Bison did not seek to compel arbitration on the
eve of trial, and the record does not affirmatively support Sambrano’s contention in
this Court that Bison delayed seeking a hearing on its motion. Bison’s motion for
summary judgment did not “go to the merits,” but to Sambrano’s post-injury waiver
of any litigation for her injuries, and the record presented does not show that discovery
was either full or complete. Finally, Sambrano failed completely to establish any
prejudice or detriment to her arising from Bison’s seeking to compel arbitration. We
therefore hold that Bison did not substantially invoke the litigation process to
Sambrano’s prejudice or detriment.
Conclusion
          We conditionally grant the petition for mandamus in Cause No. 01-07-00003-CV. We are confident that the trial court will vacate its order denying Bison’s motion
to compel arbitration and will issue the writ only if the trial court refuses to vacate its
order in compliance with this opinion. We dismiss the interlocutory appeal in Cause
No. 01-07-00029-CV for lack of jurisdiction. Cf. In re D. Wilson Constr. Co., 196
S.W.3d at 783–84 (dismissing interlocutory appeal as moot because both TGAA and
FAA applied). We deny all pending motions and lift our stay order of January 8,
2007.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.